IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02504-PSF-CBS

DAVE A. BOONE,

Plaintiff,

v.

MVM, INC.,

Defendant

---

**ORDER ON MOTION FOR JUDGMENT ON PLEADINGS**

---

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings or in the Alternative to Dismiss for *Forum Non Conveniens* (Dkt. # 14), filed on March 2, 2006. Plaintiff Dave A. Boone filed his response on March 27, 2006, and Defendant MVM, Inc. ("MVM") replied on April 17, 2006. Also pending is the parties' Joint Motion for Ruling on Defendant's Motion (Dkt. # 46), filed on October 27, 2006. The Court has reviewed the submissions of counsel and now enters the following Order.

## I. BACKGROUND

This litigation arises from an employment arrangement between Plaintiff Dave A. Boone and Defendant MVM, Inc. ("MVM"). MVM hired Mr. Boone, a retired Army Special Forces soldier, to perform private security services in Iraq. Mr. Boone claims he was terminated prior to serving the number of agreed-upon rotations in Iraq and for reasons in violation of applicable standards and public policy. He brings the following

three claims for relief: breach of an express or implied employment contract; breach of an implied contract and promise to comply with defendant's Standards of Conduct and CENTCOM's ("Central Command's")[1] rules of engagement while deployed to Baghdad; and, wrongful discharge in violation of public policy. *See generally* Am. Compl.

The following asserted facts are based on the averments in Mr. Boone's amended complaint. MVM solicited Mr. Boone's services by telephone in February 2004. Am. Compl. at ¶ 35. He received the phone call at his residence in Colorado. *Id.* After the call, Mr. Boone considered himself to be an employee of MVM and prepared to go to Iraq. *See id.* at ¶¶ 37-39, 41. On route from Colorado to Iraq, Mr. Boone was required by MVM to stop in Virginia and sign an employment agreement titled "Independent Contractor Agreement" ("ICA"). Mr. Boone signed the ICA on March 23, 2004 and then continued his flight to Iraq. Am. Compl., Ex. A; *see also* Am. Compl. at ¶¶ 43-44. The ICA has a choice-of-law provision favoring Virginia law. Am. Compl., Ex. A at ¶ 12.

MVM deployed Mr. Boone to Baghdad, Iraq from March to June 2004, after which he returned home to Colorado. While in Colorado, Mr. Boone alleges that he raised concerns with MVM about the actions of other MVM employees in Iraq. These personnel concerns caused him to resign his position with MVM. Am. Compl. at ¶ 92.

In August 2004, MVM allegedly recontacted Mr. Boone in Colorado, stated that his personnel concerns had been investigated and resolved, and asked him to rejoin MVM. *Id.* at ¶¶ 94-95. Mr. Boone agreed, and MVM redeployed him to Iraq from

[1] *See* Am. Compl. at ¶ 64; *see also* www.centcom.mil.

September to December 2004. *Id.* at ¶ 101. Apparently a new ICA was never signed; both parties cite to the original ICA in discussing what was apparently the sole written agreement between the two parties.

On November 20, 2004, a convoy in which Mr. Boone was traveling was attacked, and the vehicles in the convoy were destroyed. Am. Compl. at ¶¶ 125-26 & Ex. F thereto. Following the attack, Tony Romanzo, an MVM employee, fired his gun in five- to seven-round bursts, hitting civilian buildings. *Id.* at ¶ 133. No other MVM employee fired a weapon. *Id*. at ¶ 137. Mr. Boone alleges that he looked for enemy gunmen to engage, but did not see any. *Id*. at ¶¶ 131-32, 143. As Mr. Romanzo continued to shoot, the U.S. Army arrived on the scene, fired some shots, and then ordered a cease fire. *Id*. at ¶¶ 138-39.

Following the attack, an After Action Report ("AAR") was created. *Id*. at ¶ 152. The AAR stated that 20-30 people were shooting at the MVM employees; that three of the enemy shooters were killed in action; that seven enemy shooters were wounded in action; and that 21 people were captured following a sweep by the U.S. Army. *Id*. at ¶¶ 155-56. Mr. Boone refused to sign the AAR because he believed it to be false, as he saw no shooters. *Id*. at ¶ 164. While in Iraq, Mr. Boone also objected to what he believed was an improper relationship between a MVM employee and a married female military member, *id*. at ¶ 170, and complained about the use of illegal weapons by MVM employees. *Id*. at ¶ 173.

Mr. Boone completed his second deployment and returned to the United States, specifically, to his Colorado residence. *Id*. at ¶ 104. On January 18, 2005, two days

before Mr. Boone was to leave for his next rotation in Iraq, MVM called and informed him that he would not be rotated back as planned. *Id*. at ¶ 106. Mr. Boone claims MVM refused to rotate him back to Iraq because he did not "fit in." *Id*. at ¶¶ 107, 184. He alleges he did not fit in with MVM because he complained about the use of illegal weapons, opposed the relationship between the MVM employee and a married female military member, and challenged the truthfulness of the AAR. *Id.* at ¶ 185.

On November 7, 2005, Mr. Boone filed a complaint against MVM in Adams County District Court in Colorado, which he amended the following day. In it, he alleged the three causes of action described above. MVM filed its answer to Mr. Boone's complaint on December 8, 2005. The next day, on December 9, 2005, MVM filed notice of removal to this court (Dkt. # 1).

MVM now moves for judgment on the pleadings under F.R.Civ.P. 12(c). In the alternative, MVM seeks dismissal for *forum non conveniens*, arguing that Iraq is the best forum for the dispute because "all the operative acts took place in Iraq and the law governing MVM's personnel in Iraq is central to Plaintiff's claims." Def.'s Mot. at 18.[2] Mr. Boone in response contends he has stated a well-pled cause of action for retaliation and wrongful discharge in violation of Colorado public policy; he has stated a well-pled cause of action for breach of MVM's standards of conduct and CENTCOM's rules; and he has stated a well-pled complaint for breach of express or implied contract

---

[2] MVM does not seek to transfer the case to Virginia, the state where the ICA was signed and whose law governs the ICA pursuant to the forum selection clause.

which arises out of his employment agreement. He also challenges MVM's contention that Iraq is the proper forum for this dispute.

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

MVM contends Mr. Boone has failed to state a claim upon which relief can be granted and therefore moves for judgment on the pleadings pursuant to F.R.Civ.P. 12(c). Rule 12(c) motions are reviewed under the same standard as that governing F.R.Civ.P. 12(b)(6) motions. *See McHenry v. Utah Valley Hosp.*, 927 F.2d 1125, 1126 (10th Cir. 1991). In determining whether to grant a motion pursuant to Rule 12(c), "[g]enerally the complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Also, a court should "accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." *Nelson v. State Farm Mut. Auto Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

The Court first notes that it need not decide this preliminary motion based on the pleadings as to whether the ICA governs this dispute, which arose after Mr. Boone allegedly resigned and was then rehired in August 2004 without signing a new ICA.[3] The applicability and interpretation of the ICA is potentially important because it labels Mr. Boone as an independent contractor and contains a choice-of-law provision

[3] Mr. Boone also contends that the ICA either does not reflect a meeting of the minds of the parties thereto or constitutes an adhesion contract; accordingly, Mr. Boone argues the ICA is void or should be strictly interpreted against MVM. Pl.'s Resp. at 2-3.

favoring Virginia law. *See* Am. Compl., Ex. A. Mr. Boone's employment status and the applicable law affect the analysis of Mr. Boone's claims. Because of this Court's duty not to dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley*, 355 U.S. at 45-46, the Court will assume, as plaintiff apparently does, when appropriate and when based on the evidentiary record, to what extent, if any, the ICA applies. Although Virginia law governs the ICA, the choice-of-law provision is immaterial to the extent the ICA does not apply to Mr. Boone's claims. The viability of each of Mr. Boone's claims for relief is addressed below.

**A. Alleged Breach of Express or Implied Contract**

Mr. Boone claims MVM breached either an express or an implied contract "by not deploying plaintiff as scheduled in January 2005, and for subsequent rotations thereafter." Am. Compl. at ¶ 191. Specifically, Mr. Boone claims that the terms of his employment with MVM "provided for a minimum of three in-country rotations. Because of plaintiff's July 2004 resignation and subsequent rehire, his first rotation was from Sept. to Dec. 2004." *Id*. at ¶ 182. Plaintiff claims that defendant did not deploy him "as scheduled in January 2005 because of his opposition to the AAR, his opposition to the illegal weapons, and his opposition to the improper romantic relationship." *Id*. at ¶ 177.

MVM contends the written agreement—the ICA—governs the employment relationship between it and Mr. Boone. The ICA states "[i]t is expressly understood that the requests for Services, if any are made, shall be made from time to time and for varying durations." Am. Compl., Ex. A at 1, ¶ 1. MVM also asserts that under the ICA,

plaintiff "was not guaranteed *any* rotations at all, let alone a specific number of rotations in Iraq." Def.'s Mot. at 10 (emphasis in original).

Taking plaintiff's allegations as true, as it must, the Court finds that plaintiff may be able to support a claim for breach of express or implied contract. As noted above, it is not clear that the ICA applies to the employment relationship as it existed in January 2005. Moreover, plaintiff claims that in August 2004, when MVM rehired plaintiff, it promised him a "guaranteed minimum three rotations." Am. Compl. at ¶ 98. Thus, Mr. Boone's allegations—that he and MVM entered into a contract for employment, that such agreement was for a definite period of time and provided that plaintiff could only be fired for good cause, that MVM fired him before the expiration of the stated time period and not for good cause, and that he substantially performed his duties—state a claim for breach of contract.

**B. Claimed Breach of Standards of Conduct and the CENTCOM Rules**

Mr. Boone alleges that both he and MVM were subject to MVM's Standards of Conduct. Am. Compl. at ¶ 201. He contends that he was required by these standards to notify MVM of certain violations, such as the false AAR and the romantic relationship. *Id*. at ¶ 209. Because obeying this requirement allegedly led to his termination, Mr. Boone contends that MVM breached an "implied contract and promise of protection against retaliation" for reporting violations of its Standards of Conduct by not further deploying him. *Id*. at ¶ 212. Mr. Boone also claims that the CENTCOM rules of engagement were "implicitly incorporated into plaintiff's Employment Agreement." *Id*. at ¶ 214.

MVM argues that the ICA contains no language expressing the contractual obligation or promise plaintiff relies upon. Def.'s Mot. at 12. In fact, as defendant points out, the ICA does not mention either the Standards of Conduct or the CENTCOM rules. *Id.* at 12-13. Rather, the ICA merely requires Mr. Boone to comply with all applicable state and federal laws and conform to professional standards and ethics. Am. Compl., Ex. A at 2, ¶ 4a. MVM also claims that plaintiff "does not allege a statement by MVM that meets the requirements of an enforceable promise." Def.'s Reply at 10 (citing *Soderlun v. Pub. Serv. Co. of Colo.*, 944 P.2d 616, 620-21 (Colo. App. 1997)).

Plaintiff's allegations are sufficient, at the pleading stage, to support a claim for breach of an implied contract not to retaliate against plaintiff for complying with MVM's Standards of Conduct and the CENTCOM rules of engagement. The MVM Standards of Conduct themselves state that they are "vital guidelines that must be observed by the employee." Am. Compl., Ex. D. The Standards of Conduct list conduct "that will not be tolerated by MVM," including dishonesty and lying, violation of MVM or client policies, fraternization with MVM employees or a client's or vendor's employees while on duty, and perhaps most importantly here, "failure to notify management of serious violations of the Standards of Conduct by any MVM employee." *Id*. Similarly, plaintiff contends he had a duty under the CENTCOM rules to report violations thereof, which included opposing the false AAR. Am. Compl. at ¶¶ 213-16. Such duties on behalf of Mr. Boone can reasonably be interpreted to include an implied obligation on behalf of

MVM not to discipline him or retaliate against him for complying with the requirements imposed on him.

The Restatement (Second) of Contracts § 33(1) and (2) (1981) provide that contracts must be "reasonably certain," which means "they provide a basis for determining the existence of a breach and for giving an appropriate remedy." Here, accepting plaintiff's allegations as true, the Standards of Conduct and the CENTCOM rules provide a basis for the breach in that employees are allegedly required to comply with them, and MVM is thus implicitly required not to retaliate against or discipline employees for such compliance. *Cf. Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 525 (Colo. 1996) ("A professional employee forced to choose between violating his or her ethical obligations or being terminated is placed in an intolerable position. . . . It is just such a situation that the public policy exception was meant to prevent."). MVM's reliance on the ICA's lack of reference to the Standards of Conduct and the CENTCOM rules is not dispositive at the pleading stage, as the ICA arguably does not even apply to Mr. Boone's second employment relationship with MVM.

**C. Asserted Wrongful Discharge in Violation of Public Policy**

Mr. Boone claims that "MVM fired plaintiff because plaintiff exercised his legal rights as an American citizen to object to illegal and wrongful behavior and behavior that violates public policy." Am. Compl. at ¶ 234. MVM claims that the law applicable to this claim, which does not arise under the ICA, is Iraqi law. Def.'s Mot. at 14. Moreover, MVM contends that, even if Colorado law applies to plaintiff's claim, it still fails because Mr. Boone is not an at-will employee, he was not directed to perform an

illegal act, he was not discharged, and no Colorado public policy has been implicated. *Id*. at 15-17.

In a diversity action such as this, the forum state's choice-of-law rules apply. *See Elliot v. Turner Constr. Co*., 381 F.3d 995, 1001 (10th Cir. 2004). Colorado choice-of-law rules apply the law of the location with the most significant relationship to the claim. *Id*. Here, Iraq is the location where the events giving rise to plaintiff's complaints to MVM allegedly happened, such as the preparation of the AAR and the underlying events thereof, the alleged illegal romantic relationship, and the alleged illegal acquisition of weapons. However, Iraq has no interest in the outcome of an employment dispute between a Colorado citizen and a California corporation with its principal place of business in Virginia. Additionally, key events in this employment dispute took place in the United States and indeed within Colorado: Mr. Boone was initially contacted by MVM in Colorado, Mr. Boone claims he became an employee while in Colorado, and MVM allegedly contacted Mr. Boone in Colorado to discharge him from employment. Therefore, the Court rejects MVM's argument that Iraqi law applies to plaintiff's third claim for relief.

Moreover, it appears that either Colorado or Virginia has a more significant relationship to plaintiff's claim that he was wrongfully discharged in violation of public policy than Iraq.[4] Plaintiff is a Colorado citizen. In addition, as discussed above, key

---

[4] MVM asserts that the ICA's choice-of-law provision does not apply to Mr. Boone's claim for wrongful discharge in violation of public policy, as that claim does not arise under the ICA. Def.'s Mot. at 14. However, MVM does not address whether Virginia or Colorado law should apply to the noncontractual third claim pursuant to a choice-of-law analysis.

events relating to this public-policy based claim allegedly occurred in Colorado. Specifically, the hiring and allegedly wrongful termination of Mr. Boone occurred in Colorado. On the other hand, MVM's principal place of business is in Virginia, the ICA was signed in Virginia, and Virginia law governs the ICA pursuant to the forum selection clause. However, the Court need not make a dispositive ruling at this point as to whether Colorado or Virginia law applies because, viewing the complaint allegations in the light most favorable to plaintiff, he has stated a public-policy wrongful discharge claim under either state's law.

As an initial matter, under Colorado law an employee subject to an employment agreement arguably cannot bring a public-policy based wrongful discharge claim. *See Doll v. U.S. West Communications, Inc*., 85 F. Supp. 2d 1038, 1046-47 (D. Colo. 2000), *aff'd as to that point*, 60 Fed. Appx. 250, 252 (10th Cir. 2003), *cert. denied*, *Green v. Qwest Corp.*, 540 U.S. 1126 (2004) (noting that public-policy based wrongful discharge claims are an exception to the at-will employment doctrine under Colorado law, and holding that the rule that a party to an employment contract cannot assert such a claim, recognized in several other jurisdictions, is consistent with Colorado's approach); *Lorenz*, 823 P.2d at 108 (holding that a cause of action under the public-policy exception to the at-will employment doctrine is cognizable in Colorado); *see also Bowman v. State Bank of Keysville*, 229 Va. 534, 539, 331 S.E.2d 797, 801 (1985) (recognizing that discharge of an employee in violation of public policy is an exception to the at-will employment doctrine). However, the Court need not decide at this point whether the existence of the ICA bars plaintiff's cause of action because, as discussed

above, plaintiff has pled sufficient allegations to suggest he was not subject to the ICA at the time of his discharge and thus is arguably an at-will employee for purposes of determining whether he has adequately pled a common law wrongful termination claim based on public policy considerations.

As to the substance of the claim, the Colorado Supreme Court has stated that "an employee, whether at-will or otherwise, should not be put to the choice of either obeying an employer's order to violate the law or losing his or her job. [¶] Moreover, we know of no reason why the public-policy exception should not apply to the discharge of an employee either because of the employee's performance of an important public obligation . . . , or because of the employee's exercise of a statutory right or privilege granted to workers . . . ." *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992). The underlying rationale of the public-policy exception to termination of an at-will employee "is to prohibit an employer from placing an employee in the position of keeping a job only by performing an illegal act, forsaking a public duty, or foregoing a job-related right or privilege." *Id*.

Even though Mr. Boone has not alleged MVM directed him to perform an illegal act, he has alleged MVM fired him for performing an allegedly important public obligation and required him to forsake a public duty in order to remain employed. Specifically, plaintiff points to a federal statute, 18 U.S.C. § 1001(a), which prohibits making false statements and reports on a government contract. *See* Am. Compl. at ¶ 230. An employer's termination of an employee for allegedly refusing to violate a federal law as demanded by an employer or for performing an important public

obligation is a violation of Colorado state employment law. *Lorenz*, 823 P.2d at 111 (termination for refusal to violate 18 U.S.C. § 1001 will support a claim for wrongful discharge); *id.* at 109 ("There is no question that the manifest public policy of this state is that neither an employer nor an employee should be permitted to knowingly perpetrate a fraud or deception on the federal or state government."). Mr. Boone allegedly performed such an obligation by reporting violations of this federal statute when he reported about the false AAR. *See also Mariani*, 916 P.2d at 524-25 (professional employees have a duty to abide by federal and state law as well as ethical obligations). Thus, Mr. Boone has stated a claim under Colorado law for wrongful discharge in violation of public policy.

Although not quite as broad, the public-policy exception is also recognized under Virginia law. Specifically, Virginia courts recognize a "narrow . . . exception to the employment-at-will doctrine limited to discharges which violate *public* policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *Miller v. SEVAMP, Inc.*, 234 Va. 462, 467-68, 362 S.E.2d 915, 918 (1987) (emphasis in original). Thus, although a closer question, Mr. Boone's allegations construed in a light most favorably to him arguably state a claim under Virginia law as well. *See id.* at 919 (retaliatory discharge that impacts "public policy established by existing laws for the protection of the public generally" is actionable). Mr. Boone allegedly refused to sign and repeatedly objected to a government report that he believed to be untrue and that was allegedly submitted to the government in violation of federal law. Am. Compl. at ¶¶ 164, 167-68,

229-30. Terminating Mr. Boone in retaliation for such actions, if true, arguably violates the "policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *Miller*, 362 S.E.2d at 918.

Finally, Mr. Boone has clearly alleged that he was terminated by MVM despite MVM's contention that he was not discharged. Therefore, his claim for wrongful discharge in violation of public policy survives MVM's Rule 12(c) motion.

## III. MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

MVM contends that, if its Rule 12(c) motion fails, the Court should nonetheless dismiss the case for *forum non conveniens*. MVM argues Iraq is a more convenient forum because all of the operative facts took place in Iraq and Iraqi law should apply. Def.'s Mot. at 18.

Under Supreme Court jurisprudence, "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). Two threshold questions for the *forum non conveniens* determination must be answered: Is there an adequate alternative forum in which the defendant is amenable to process, and does foreign law apply? *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998), *cert. denied*, 526 U.S. 1112 (1999). If the answer to either of these questions is no, the *forum non conveniens* doctrine is inapplicable. *Id.* at 604-05.

Here, it has already been determined that Iraqi law does not apply to this dispute. Moreover, would Iraq truly be a more convenient place for the parties, a United States citizen and corporation, to litigate this dispute than Colorado? For

example, it is not clear that witnesses in this case remain in Iraq or would be subject to subpoenas to testify in Iraq. *See* Pl.'s Resp. at 9 (asserting that potential witnesses are American citizens that can be found in the United States). Therefore, the doctrine is inapplicable and the Court denies MVM's request to dismiss this case for *forum non conveniens.*

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings or in the Alternative to Dismiss for *Forum Non Conveniens* (Dkt. # 14) is DENIED. In light of this ruling, the parties' Joint Motion for Ruling on Defendant's Motion (Dkt. # 46) is DENIED AS MOOT.

DATED: February 15, 2007

BY THE COURT:

*s/ Phillip S. Figa*

Phillip S. Figa
United States District Judge